UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60136-CIV-MIDDLEBROOKS/BRANNON

ODORSTAR TECHNOLOGY, LLC and
KINPAK, INC.,

   Plaintiffs,

vs.

SMM DISTRIBUTORS, LLC d/b/a
BIOCIDE SYSTEMS, SPENCER BLUA,
and JUAN CARLOS BASELLI,

   Defendants.
_____/

## ORDER ON INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

THIS CAUSE comes before the Court upon Defendants Spencer Blua ("Blua") and Juan Carlos Baselli's ("Baselli") (collectively, "Individual Defendants") Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction, Failure to State a Claim, and Improper Venue (DE 42) ("Motion"), filed July 23, 2013. Plaintiffs Odorstar Technology, LLC ("Odorstar") and Kinpak, Inc. ("Kinpack") (collectively, "Plaintiffs") filed a Response (DE 44 on August 6, 2013, to which the Individual Defendants filed a Reply (DE 45) on August 16, 2013. I have reviewed the Motion, Response, Reply, and record in this case, and I am otherwise fully advised in the premises.

**I.   Background**

On July 23, 2013, Plaintiffs filed a First Amended Complaint (DE 39) (the "Complaint") alleging infringement of U.S. Patent No. 6,764,661 (the "'661 Patent") against the Individual Defendants as well as Defendant SMM Distributors, LLC d/b/a Biocide Systems ("Biocide").

1

Odorstar is a Florida-based limited liability company, engaged in the management and treatment of odors and is the sole owner by assignment of the '661 Patent. The '661 Patent protects a device that produces an aqueous chlorine dioxide solution when placed in water, which can be used to eliminate odors. Kinpak is an Alabama corporation that appears to be the exclusive manufacturer for a line of deodorizing products sold under license from the '661 Patent. Defendant Biocide is a California-based limited liability company engaged in the business of selling odor eliminating products. Defendant Blua is the Chief Financial Officer of Biocide, and Defendant Baselli is the Chief Executive Officer of Biocide. Both Individual Defendants are citizens of California.

The Complaint alleges that Biocide uses, sells, and offers to sell several odor-eliminating products called the "Room Shocker," "RV Shocker," "Marine Shocker," and "Auto Shocker." Plaintiffs allege that Biocide has sold these products at lease since January 2008, through the online marketplace, Amazon.com. It is these products that Plaintiffs allege infringe the '661 Patent. (*See* DE 39 at ¶ 27).

Pursuant to its license for the '661 Patent, Kinpak also manufactures deodorizing products for BBL Distributors, LLC d/b/a Odorscience ("BBL"). (DE 39 at ¶ 19). In February of 2008, BBL entered into a distribution agreement with Biocide to sell a line of odor disinfectant products under the brand name "NOSGUARD." Under the agreement, which was attached to the Complaint, BBL would supply Biocide with the NOSGUARD products as well as the applicable retail labels. It appears from the Complaint and the attached exhibits that Biocide would then label and market these products under their "Shocker" line. According to the Complaint, no patent license was granted as part of the agreement. There is no mention of the '661 Patent in the agreement.

This agreement was terminated on January 3, 2010, by Greg Boyle, operating manager of BBL. On March 11, 2011, Defendant Blua confirmed via e-mail that Biocide ceased sales of BBL products and the remaining unsold products were returned to BBL. Defendant Baselli was copied on this e-mail. The Complaint goes on to allege that the Individual Defendants had direct knowledge of the '661 Patent because when Boyle received the returned products, the '661 Patent number markings had been concealed on the packaging containing the Biocide products returned by BBL.

The Complaint alleges that Biocide directly infringes one or more claims of the '661 Patent, and that the Individual Defendants infringe the '661 Patent by inducing Biocide to infringe in violation of 35 U.S.C. § 271(b). Specifically, the Complaint alleges that the Individual Defendants induced infringement "at least by aiding and abetting and/or directing the infringement of the '661 Patent by Biocide." (DE 39 at ¶ 36). The only allegations the Complaint provides as to possible contacts the Individual Defendants have with Florida is that they are "intentionally advertising and marketing the Biocide infringing products within this State, at least by and through the website and biocidesystems.com . . . ." (DE 39 at ¶ 33).

In the instant Motion, the Individual Defendants make three main arguments. First, the Individual Defendants argue that this Court lacks personal jurisdiction over the Individual Defendants.[1] Second, the Individual Defendants argue that the Complaint fails to state a claim against the Individual Defendants. Last, the Individual Defendants argue that venue is improper in this District under 28 U.S.C. §1400(b).[2]

---

[1] Defendant Biocide has not disputed personal jurisdiction in this District.
[2] 28 U.S.C. § 1400(b) provides: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

3

## II. Legal Standard

Personal jurisdiction in a patent infringement action is governed by the law of the Federal Circuit. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003); *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348 (Fed. Cir. 2002). Prior to discovery, a plaintiff must only make a prima facie showing that a defendant is subject to personal jurisdiction and the pleadings and affidavits must be construed in the light most favorable to the plaintiff. *Silent Drive*, 326 F.3d at 1201 (citations omitted).

In this case, Plaintiffs assert specific jurisdiction over the Individual Defendants based on the allegation that the Individual Defendants committed the tort of inducing patent infringement. When specific jurisdiction is alleged, the Court must first look to the state long-arm statute and determine that the party is amenable to service of process under that statute. *Silent Drive*, 326 F.3d at 1200; *Hildebrand v. Steck Mfg. Co., Inc.*, 279 F.3d 1351, 1354 (Fed. Cir. 2002). In analyzing a forum state's long-arm statute, the Federal Circuit defers to that state's interpretations of the long-arm statute. *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998). Once established, the Court then examines the due process requirements under the United States Constitution. *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). In determining whether due process is satisfied in a patent case, the Federal Circuit has identified three factors for consideration: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Silent Drive*, 326 F.3d at 1201-02 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)) (internal quotation marks omitted).

4

Here, the long-arm statute relied upon by Plaintiffs, Florida Statues § 48.193(1)(b), provides in relevant part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>
> 2. Committing a tortious act within this state.

Fla. Stat. 48.193(1)(a) (2013).

Patent infringement is a tortious act and the tort occurs where the offending act is committed. *North Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1578-79 (Fed. Cir. 1994); *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1579 (Fed. Cir. 1986). Selling an infringing article to a buyer in Florida is to commit a tort there. *North Am. Philips*, 35 F.3d at 1578-79. "[O]fficers of a corporation are personally liable for tortious conduct of the corporation if they personally took part in the commission of the tort or specifically directed other officers, agents, or employees of the corporation to commit the tortious act." *Orthokinetics*, 806 F.2d at 1579. In other words, liability of corporate officials who actively aid and abet their corporation's infringement are subject to personal liability without regard to whether the corporation is the alter ego. *Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 481 (Fed. Cir. 1985). Section 271(b) of Title 35 provides that "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To prevail on a claim of inducement, a plaintiff must show that there has been direct infringement and that the infringer "knowingly induced the infringement and possessed specific intent to encourage another's infringement." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420

F.3d 1369, 1378 (Fed.Cir.2005) (citing *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)).

### III.  Analysis

In first looking to Florida's long-arm statute, the Court must determine whether Plaintiff has made a prima facie showing that the requirements of the Florida long-arm statute have been met. Plaintiff's Complaint alleges that the Individual Defendants induced infringement by "aiding and abetting and/or directing the infringement of the '661 Patent by Biocide." (DE 39 at ¶ 36). Particularly, the Complaint alleges that the Individual Defendants "concealed the '661 Patent number marking on the packaging containing Biocide products" and continued directing Biocide to infringe the '661 Patent despite knowledge of infringement. (DE 39 at ¶¶ 32, 33). Plaintiff also submitted the affidavit of Greg Boyle, one of the managers of Odorstar, who verifies certain exhibits regarding the agreement and communications between him and the Individual Defendants.

In response, the Individual Defendants submit personal affidavits that they have no connection to Florida, do not conduct business in Florida, and have not committed any tortious acts in Florida or otherwise personally caused harm or injury in Florida. (*See* DEs 27-1, 27-2). Defendant Blua also submitted a supplemental declaration, explaining that neither the distribution agreement cited in the Complaint, nor any communications regarding such, had anything to do with the State of Florida. (*See* DE 42-1).

Having reviewed the allegations and affidavits, I find that Plaintiff has made a prima facie showing that the Individual Defendants committed tortious acts in Florida, and are therefore subject to Florida's long arm statute.[3]

---

[3] Since the Motion is due to be granted for reasons set forth below, I decline to address whether

6

However, regardless of the of first part of the Court's inquiry into the existence of personal jurisdiction, the Court finds that there are insufficient "minimum contacts" between the Individual Defendants and Florida to ensure due process. The exercise of jurisdiction over nonresident defendants of a forum state is not inconsistent with due process if the nonresident defendants have certain "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 462 (1940)). In general, there must be "some act" by which defendants "purposefully avail[]" themselves of the "privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzeqicz*, 471 U.S. 462, 475 (1985). The contacts made by defendants must therefore by their actions create a "substantial connection" to the forum state-where defendants have deliberately "engaged in significant activities within a State" or have "created 'continuing obligations' between [themselves] and residents of the forum" and "proximately result from the actions by the defendant[s] themselves," such that it is "presumptively not unreasonable to require [defendants] to submit to the burdens of litigation in that forum as well." *Id.* at 475-76 (citations omitted).

Here, Plaintiff has alleged that the Individual Defendants were personally responsible for the infringement by Biocide through sales of infringing products in Florida. Specifically, Plaintiff alleges that the Individual Defendants induced infringement "by intentionally advertising and marketing the Biocide infringing products within this State, at least by and through the website and biocidesystems.com . . . ." (DE 39 at ¶ 33).

---

the Individual Defendants' positions as corporate officers shields them from personal jurisdiction under Florida law.

7

Even assuming that Biocide infringes the '661 Patent and that sales of infringing products have occurred in Florida, Plaintiffs have failed to make a prima facie showing that an exercise of specific jurisdiction in this case would comport with the requirements of the Due Process Clause. As discussed above, the Individual Defendants have submitted affidavits that they have not had any contacts with Florida in their official capacity, and have not been to Florida for personal reasons since 2005. Other than maintenance and operation of certain websites (as part of their employment), Plaintiffs fail to allege any contacts with the State of Florida by the Individual Defendants. Assuming that Biocide sold products in Florida, an assumption to which Plaintiffs are entitled, the Individual Defendants' activities cannot be considered as "purposefully directed" to Florida. Nor is it alleged that their activities are directed at Plaintiff Odorstar in Fort Lauderdale. The only allegation uncontroverted by affidavits is that the Individual Defendants marketed and advertised the infringing product on the internet on for purposes of the company. It is not alleged that they acted in any personal capacity, or themselves sold infringing products to Florida residents. Further, the distribution agreement alleged in the Complaint was between Biocide and BBL Distributors, LLC, a New Jersey limited liability company. (*See* Boyle Affidavit, DE 39 at 55). According to Defendant Blua's declaration, all communications regarding that distribution agreement were between California and New Jersey – not Florida. Plaintiffs have not submitted evidence to the contrary. Accordingly, the Court finds that the Individual Defendants did not have the requisite "minimum contacts" with Florida.

Here, because Plaintiffs have failed to rebut the evidence that the Individual Defendants did not have the requisite minimum contacts with Florida, personal jurisdiction cannot be

exercised over the Individual Defendants without violating due process. As such, the Motion is due to be granted.[4]

Accordingly, it is hereby

**ORDERED AND ADJUDGED** that the Individual Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint for Lack of Personal Jurisdiction, Failure to State a Claim, and Improper Venue (DE 42) is **GRANTED**. Plaintiff's claims against Defendants Blua and Baselli are **DISMISSED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 26 day of September, 2013.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record

---

[4] Since this Court cannot exercise jurisdiction over the Individual Defendants, I decline to address the remaining arguments of whether the Complaint fails to state a claim against the Individual Defendants and whether venue properly lies in this District.

9