UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 0:13-cv-60136-DMM

ODORSTAR TECHNOLOGY, LLC,
a Florida Limited Liability Company, and
KINPAK, INC., an Alabama corporation,

       Plaintiffs,
v.

SMM DISTRIBUTORS LLC, a California
Limited Liability Company d/b/a BIOCIDE
and SMM MANUFACTURING, INC., a
California Corporation,

       Defendants.
_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEY FEES**

Plaintiffs, Odorstar Technology, LLC ("Odorstar") and Kinpak, Inc. ("Kinpak") (collectively, "Odorstar"), hereby oppose Defendants' Motion for Attorney Fees and Memorandum of Law [ECF Nos. 99, 100].

Initially, Plaintiffs are alarmed at Defendants' numerous false representations made to the Court throughout their Motion for Attorney Fees. As discussed in more detail below, Plaintiffs believe that such misrepresentations are evidence of Defendants' counsels' bad faith attempt to get paid, because their own clients are not paying their bills. Instead of feeling fortunate that the Court ruled in their favor on Summary Judgment in an close case, the Defendants have taken it one step too far by asking the Court to penalize Plaintiffs for nothing more than enforcement of their intellectual property rights, and have even gone so far as to falsely accuse Plaintiffs' counsel of unethical conduct in bringing this lawsuit, all in an effort for Defendants' counsel to get paid. The Court should not condone such bad faith tactics.

1

As a result of Defendants' misrepresentations, Plaintiffs have unnecessarily expended significant resources in responding to Defendants' meritless Motion for Attorney Fees. In support of their Opposition, Plaintiffs state as follows:

## I. BACKGROUND

In spite of Defendants' claims to the contrary, Plaintiffs have always had, and continue to have, good faith in the pursuit of enforcing their intellectual property rights against Defendants. Although Plaintiffs vigorously enforce their intellectual property rights, they do not engage in frivolous litigation concerning those rights.  For instance, and contrary to Defendants' claims, Plaintiffs conducted their own infringement analysis as part of their pre-filing investigation and laid out their findings in a claim chart that was attached to the original cease and desist letter that was sent to Defendants on January 18, 2013. (See Exhibit A).

From the outset, Plaintiffs never instituted a strategy of intimidation nor engaged in the instant action as a "pretext to spread fear" as Defendants suggest. In fact, as stated in Plaintiffs' original cease and desist letter to Defendants, Plaintiffs initially filed their Complaint against Defendants but *refrained* from serving them in hopes of resolving the dispute amicably without the need for litigation. In the face of Plaintiffs' attempt at professionally and amicably resolving the dispute, Defendants responded to the cease and desist letter on January 31, 2013 with correspondence laced with an intimidating tone and threats both to Plaintiffs and Plaintiffs' counsel. (See Exhibit B). Instead of engaging in the intimidation strategy that *Defendants* pursued from the outset, Plaintiffs responded to the January 31, 2013 letter on February 5, 2013 with further analysis of Defendants' infringing products and with continued hopes of resolving the dispute amicably. (See Exhibit C). However, by March 10, 2013, over 50 days after Plaintiffs initiated the lawsuit, it became clear to Plaintiffs that amicably resolving the dispute was unlikely. Accordingly, Plaintiffs served SMM Distributors, LLC d/b/a Biocide (hereinafter

2

"Biocide") and its principals, Spencer Blua and Juan Baselli, on March 10, 2013 in order to move the action forward. [See ECF No. 14].

Mr. Blua and Mr. Baselli previously engaged in business with BBL Distributors, LLC d/b/a OdorScience ("BBL"), a partial owner of Odorstar, and through that relationship, they each personally knew of Odorstar's U.S. Patent No. 6,764,661 (hereinafter "the '661 Patent"). After their relationship and agreement with BBL were terminated, Biocide began selling and manufacturing similar products without the '661 Patent owner, Odorstar's, permission. Plaintiffs believed that the two principals were willfully inducing infringement of Plaintiffs' patent when they concealed the '661 Patent number on the packaging containing Biocide products supplied by BBL. As such, Plaintiffs' filed an Amended Complaint reflecting their beliefs concerning Mr. Blua and Mr. Baselli, on July 22, 2103. [ECF No. 38]. Plaintiffs believed that Mr. Blua and Mr. Baselli's infringement inducing and deceptive behavior was further buttressed by facts presented by Mr. Blua himself during his deposition on September 10, 2013. Mr. Blua shed light on facts such as Biocide's defunct business status, which no one previously informed Plaintiffs of; Mr. Blua and Mr. Baselli's personal falling out with a manager of BBL; and their roles as the sole decision making members of their business. In Plaintiffs' eyes, these facts further validated their position that Biocide was a mere alter ego of Mr. Blua and Mr. Baselli who were intent on willfully infringing Odorstar's patent.

However, due to lack of evidence of minimum contacts, the Court dismissed the individual defendants from the instant action on September 27, 2013. [ECF No. 52]. In the Order, however, the Court noted "that Plaintiff has made a prima facie showing that the Individual Defendants committed tortious acts in Florida, and are therefore subject to Florida's long arm statute." [ECF No. 52]. Thereafter, both parties filed their own respective Motions for Summary Judgment [ECF Nos. 55, 60]. On January 28, 2014, this Court issued a Final

3

Judgment in the matter, ruling in favor of Defendants' Summary Judgment and ruling on claim construction of the U.S. Patent No. 6,764,661. [ECF Nos. 91, 92]. Subsequently, on February 10, 2014, Plaintiffs filed the Notice of Appeal [ECF No. 93]. Over a month and a half later, on March, 27, 2014, Biocide filed a Motion for Attorney Fees and Costs seeking to collect $259,550.00 [ECF No. 99], which is the matter currently at issue.

## II.  DEFENDANTS' FACTS IN ERROR

Defendants' Motion for Attorney Fees is laden with not only a cynical tone, but also a depiction of inaccurate facts in its almost 10 pages of background and facts sections. For that reason, Plaintiffs believe it prudent to specifically clarify the misrepresentations presented in Defendants' Motion before submitting their argument. On Page 3 of Defendants' Motion, Defendants assert that "Plaintiffs knew before they filed the complaint that Biocide did not infringe." This factual representation is false. As set forth above and as argued below, Plaintiffs believed prior to the lawsuit and continue to assert that Defendants' products infringe the '661 Patent. In fact, Plaintiffs so sincerely believe that Biocide is infringing the '661 Patent, that they have filed an Appeal to prove as much at a significant expense.

Next, beginning on Page 2 and carried throughout the rest of the Motion, Defendants' assert that Mr. Greg Boyle is an agent of Plaintiffs and that his personal communications to the Defendant Companies and Mr. Blua and Mr. Baselli represent the "intimidation" and "bad faith" intentions of Plaintiffs. These assertions are untrue. In fact, Mr. Greg Boyle is neither a Plaintiff in this action, nor does he have any intellectual property or litigation instigating authority at Odorstar or Kinpak. Plaintiffs attach the Affidavit of Odorstar and Kinpak's President, Peter Dornau, who swears to these facts in detail. (See Exhibit D).

Further, on Page 4 of Defendants' Motion, Defendants assert that after they sent their January 31, 2013 letter, "there was no response to this letter, and these facts, other than to serve

4

the complaint and inflict an unnecessary and costly defense on the defendants…" Again, this assertion is false. As mentioned above, although Plaintiffs were disappointed with Defendants' threating letter, Plaintiffs responded to it on February 5, 2013. (See Exhibit C). The February 5, 2013 letter responded to Defendants' correspondence and laid out further analysis of Defendants' infringement. The February 5, 2013 correspondence also expressed Plaintiffs continued desire to amicably resolve the matter without further litigation. Also on Page 4 of the Motion, Defendant's further assert that "there is no evidence in this case that Plaintiffs ever conducted a formal infringement analysis as part of their pre-filing investigation." This allegation is untrue. Not only did Plaintiffs conduct a pre-filing investigation, but they also mailed a claim construction chart depicting Biocide's infringement to the Defendants on January 18, 2013 along with the initial cease and desist letter. (See Exhibit A).

Significantly, on Page 9 of Defendants' Motion, Defendants assert that "the individual defendants had to suffer all the way through the discovery process" and that "Mr. Blua was deposed in Florida" at an "extra expense" in addition to answering discovery requests. These claims are mischaracterized. Plaintiffs were mindful of the Individual Defendants' time and intentionally scheduled both the Mediation and the Depositions of Biocide and Mr. Blua over the course of consecutive days to avoid additional expenditures. This scheduling allowed for the parties to conveniently convene during one trip instead of two separate instances. Further, Mr. Blua did not suffer any additional expenses by having to be deposed in Florida as an individual Defendant as Mr. Blua was already set for deposition as Biocide's 30(b)(6) corporate designee.

Moreover on Pages 8 and 9 of Defendants' Motion, Defendants assert that "Plaintiffs used the lawsuit as a pretext to spread fear, uncertainty, and doubt about Biocide in the marketplace" and that filing an amended complaint "was a deliberate effort to make the defendants spend more money and to intimidate the defendants by putting their personal

5

resources on the line." Once again, these "factual" allegations are false. Plaintiffs filed the lawsuit to enforce their intellectual property rights. Moreover, the purpose of filing the Amended Complaint was to add a necessary party to further clarify the allegations against the Individual Defendants.

Finally, on Page 16 of their brief, Defendants mischaracterize Plaintiffs' proposed claim construction terms. First, Defendants state that "plaintiffs also tried to construe the term 'connected to' to essentially mean 'not connected to.'" [ECF No. 99; Pg 16]. Plaintiffs actual proposed construction of "connected to" was "bring together or into contact so that a real or notional link is established, or merely inserted within." [See ECF No. 55]. Further, Defendants assert that "plaintiffs also sought a claim construction position that allowed the language 'extending into' to mean, in effect, 'not extending into.'" [ECF No. 99; Pg. 16]. Plaintiffs actual proposed construction of "extending into" was "occupy a specified area." [See ECF No. 55]. As such, these are merely a few of Defendants many misrepresentations of the facts involved in the instant action.

### III.  LEGAL STANDARDS

Patent infringement lawsuits are generally subject to the same rules that control other federal litigation, in so much as "each party bears its own expenses." *Merial Ltd. v. Intervet, Inc.*, 437 F. Supp. 2d 1332, 1335 (N.D. Ga. 2006).

According to 35 U.S.C. § 285, "[t]he court in *exceptional* cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285 (emphasis added). "The statute allowing attorneys' fees in patent cases, 35 U.S.C. § 285, provides that attorneys' fees are awarded to the prevailing party *only* in exceptional cases, which have been defined as cases involving equitable considerations such as unfairness or bad faith in the losing party's conduct." *Astrazeneca AB v. Mut. Pharm. Co.*, 2003 U.S. Dist. LEXIS 21055 at *6 (E.D. Pa. Nov. 12, 2003)(emphasis added).

To decide whether a prevailing party should be awarded attorney fees under the statute, the court must first conduct a two-part analysis. First, the court must decide whether the prevailing party has proven "an exceptional case by clear and convincing evidence." *Perricone v. Medicis Pharmaceutical Corp*., 432 F.3d 1368, 1380 (Fed. Cir. 2005); *See also Stephens v. Tech Intern., Inc*., 393 F.3d 1269, 1276 (Fed. Cir. 2004)("an exceptional case finding is not to be based on speculation or conjecture but upon clear and convincing evidence"). Only after the Court determines whether a case is exceptional, the Court then must determine whether an award of attorneys' fees is appropriate. *Perricone*, 432 F.3d at 1380.

The statute, 35 U.S.C. § 285, does not explicitly define "exceptional" but the Federal Circuit has stated that "exceptional circumstances include, inter alia, inequitable conduct during prosecution of a patent, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit." *Bayer Aktiengesellschaft v. Duphar International Research*, 738 F.2d 1237, 1242 (Fed. Cir.1984). Courts may additionally consider the closeness of the case, the tactics of counsel, the good faith of the parties' conduct, and "any other factors contributing to imposition of punitive sanctions or to a fair allocation of the burdens of litigation." *Perricone*, 432 F.3d at 1380-81. *See also Brooks Furniture Mfg., Inc. v. Dutailier Intern*., Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005)("a case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as . . . misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions");

Furthermore, "*[m]erely prevailing is not enough to show that a case is exceptional*; there must be evidence of bad faith, fraud, gross negligence or unclean hands on the part of the losing party." *Responsible Me, Inc., v. EVENFLO Company, Inc., et al.,* 2009 U.S. Dist. LEXIS 125344, * 9 (S.D. Fla. 2009)(J. Hurley)(internal citations omitted)(emphasis added). *See also Brooks Furniture Mfg., Inc*., 393 F.3d at 1384 ("[i]nfringement is often difficult to determine,

7

and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith"); *see also Multi-Tech, Inc*., 708 F.Supp.at 620 (defendant "must demonstrate that there is evidence of actual wrongful intent or of gross negligence on the part of the plaintiff in bringing the action"). Moreover, "[i]n determining awards of attorney's fees under 35 U.S.C. § 285, courts must remain mindful that such awards are 'neither usual nor customary' and 'never follow[]as a matter of course from the outcome of the case.'" *Responsible Me, Inc.,* 2009 U.S. Dist. LEXIS 125344 at * 9.

## IV.  ARGUMENT

First and foremost, there is nothing exceptional about this case; therefore each party should bear its own expenses. Patent infringement lawsuits are generally subject to the same rules that control other federal litigation, in so much as "each party bears its own expenses." *Merial Ltd.,* 437 F. Supp. 2d at 1335. Specifically, Defendants have not proven that this case is exceptional by any relevant evidence, much less proffered clear and convincing evidence as required. *Perricone,* 432 F.3d at 1380 ("an exceptional case by clear and convincing evidence."); *See also Stephens* 393 F.3d at 1276 ("an exceptional case finding is not to be based on speculation or conjecture but upon clear and convincing evidence"). Defendants mainly argue two points as to why they should be awarded attorneys' fees: (1) that they prevailed at both the Motion to Dismiss Individual Defendants and Summary Judgment; and (2) that they think the lawsuit was part of an "intimidation policy" by Plaintiffs thereby making the case "baseless."

Although prevailing in an action is necessary for consideration of attorneys' fees, it is not the key element. "***Merely prevailing is not enough to show that a case is exceptional***; there must be evidence of bad faith, fraud, gross negligence or unclean hands on the part of the losing party." *Responsible Me, Inc.,* 2009 U.S. Dist. LEXIS 125344 at * 9 (emphasis added). Defendants rely heavily on the fact that they prevailed on two motions. For instance Defendants

8

state: "[s]ince the defendants prevailed on all disputed issues, they should be permitted to recover the entire sum of $259,550.00" [ECF No. 99; Pg. 8]. As discussed in Plaintiffs' Motion to Stay [ECF No. 101], Defendants focus the majority of their Motion on being the prevailing party and little else. In fact, Defendants do not even approach their argument of exceptionality until Page 11 of their brief. Awarding Defendants' attorneys' fees would therefore invite a dangerous precedent of inviting **all** prevailing parties to fight for attorneys' fees instead of only the prevailing parties in truly exceptional case. The American Judicial System does not practice British Rule where the prevailing party automatically acquires attorneys' fees. As such, awarding Defendants' attorneys' fees based primarily on prevailing in the action would open the flood gates of unnecessary litigation that would clog the system and would dilute the ability of prevailing parties in actual exceptional cases to succeed.

### (a) *Prevailing on Defendants' Motion to Dismiss Individual Defendants does not make this case exceptional.*

Defendants further argue that the case is exceptional because the claims against Mr. Blua and Mr. Baselli "are objectively baseless." [ECF No. 99; Pg.12]. Further, Defendants claim that accusing Mr. Blua and Mr. Baselli of infringement is "outrageous." [ECF No. 99; Pg. 13]. Plaintiffs disagree with both assertions. Significantly, "[t]o be objectively baseless, the infringement allegations must be such that **no reasonable** litigant could reasonably expect success on the merits." *Highmark, Inc., v. Allcare Health Mgm't Sys., Inc.,* 687 F.3d 1300, 1309 (Fed. Cir. 2012)(emphasis added). Additionally, "[t]here is a presumption that the assertion of infringement of a duly granted patent is made in good faith." *Brooks Furniture Mfg., Inc. v. Dutailier Intern.*, Inc., 393 F.3d 1378, 1380 (Fed. Cir. 2005)(citing *Spring Willow Fashions, LP v. Novo Indus. ,LP,* 323 F.3d 989, 999 (Fed. Cir. 2003).

Plaintiffs had good faith in commencing the litigation against the Individual Defendants. Defendants' prior relationship with BBL and their apparent infringement inducing behavior led

9

Plaintiffs to believe the Individual Defendants were at least partially personally responsible for the '661 Patent infringement. At the outset, Plaintiffs reasonably believed that Mr. Blua and Mr. Baselli had contacts with Florida because they engaged in several dubious actions which led Plaintiffs to believe that they were personally inducing infringement of the '661 Patent. Based on emails from the Individual Defendants, Plaintiffs reasonably believed that Mr. Blua and Mr. Baselli were shipping infringing products into Florida – at least plausibly conferring Personal Jurisdiction on them. See Plaintiffs' Amended Complaint at [ECF No. 38]. Specifically, Plaintiffs believe the Individual Defendants reasonably belonged in the case as Defendants because they knew of the '661 Patent before the instant action was filed, concealed the '661 Patent Number on their previously sold Biocide products, and because they are the only decision makers of Biocide. This behavior gave the appearance that Biocide was a mere alter ego of the Individual Defendants own personal intentions. [See ECF No. 44].

Further, Defendants base the majority of their argument of baselessness on Mr. Greg Boyle's communications with Mr. Blua and Mr. Baselli. Specifically, Defendants state that "Mr. Boyle began a systematic effort to put Biocide out of business, shortly after learning that Biocide had introduced a new product to compete with plaintiffs[1]." [ECF No. 99; Pg. 7]. As declared in Peter Dornau's Affidavit, Mr. Greg Boyle's private communications with Mr. Blua and Mr. Baselli had nothing to do with Odorstar instituting litigation against Biocide or the Individual Defendants for infringement. (See Exhibit D; ¶ 4) Mr. Greg Boyle does not have the authority to make intellectual property or litigation based decisions for Odorstar or Kinpak. (See Exhibit D; ¶ 3, 6) Specifically, Odorstar, and its President, Peter Dornau, knew nothing of Mr. Boyle's private communications to the Individual Defendants until *after* the lawsuit began. (See Exhibit D; ¶ 8).

---

[1] On Page 7 of their motion, Defendants infer that Mr. Boyle is a racist. As such, Plaintiffs will not address such screed as it is merely a strawman tactic designed to district the Court from the real issue at hand–the fact that this case is unexceptional.

10

Likewise, Defendants know that neither Plaintiffs nor Plaintiffs' counsel knew of those communications until *after* litigation began. In particular Defendants' own brief states that "the January 31, 2013 letter brought to the plaintiffs' counsel's attention the threatening, disparaging and slanderous communications made by Mr. Greg Boyle on behalf of the plaintiffs." [ECF No. 99; Pg. 4]. Although Defendants' statement inaccurately infers that Mr. Greg Boyle sent the communication on behalf of the Plaintiffs, the fact remains that Mr. Boyle is not a Plaintiff in this action. Thus, his communications should not be transferred onto Plaintiffs nor be given consideration by this Court. Additionally, Mr. Boyle does not have the authority to make such business decisions as commencing a lawsuit on behalf of the Plaintiffs. (See Exhibit D; ¶ 4, 7). Plaintiffs did not institute the current action based on those communications or in bad faith as evidenced by them not even knowing about the communications referenced by Defendants until *after* the lawsuit began.

Moreover, Plaintiffs reasonably believed that this Court had personal jurisdiction over Mr. Blua and Mr. Baselli based on the standards set forth by Judge Marra. "When an intentional tort is alleged, personal jurisdiction may be supported over a non-resident defendant who has no other contacts with the forum." *Exhibit Icons, LLC v. XP Cos., LLC*, 609 F. Supp. 2d 1282, 1298 (S.D. Fla. 2009) (Marra, J.). Here, although the Court ultimately dismissed the Individual Defendants from the case, the Court noted "that Plaintiff has made a prima facie showing that the Individual Defendants committed tortious acts in Florida, and are therefore subject to Florida's long arm statute." [ECF No. 52]. The Court's notice of the Individual Defendants' tortious behavior is further evidence of Plaintiffs reasonable good faith belief in bringing this action against the Individual Defendants.

Indeed, Plaintiff Odorstar and its exclusive licensee, Plaintiff Kinpak, collectively work together to make actual products for the general public. As such, Odorstar is a local business and

not a patent troll. In fact, had Plaintiffs prevailed on Summary Judgment, they would have considered bringing a Motion for Attorney Fees and injunctive relief against Defendants for their apparent willful continued manufacturing and sale of the accused infringing products throughout the course of the litigation. Further still, in Plaintiffs perspective, ***Defendants*** were holding themselves out as an active company when in fact it was defunct. Specifically, had Defendants not re-incorporated their business under the newly formed SMM Manufacturing, the Individual Defendants would have been personally liable for infringement by SMM Distributing as a defunct company. Taken altogether these facts, in the very least, are indicative of Plaintiffs reasonable basis for filing the lawsuit against the Individual Defendants.

**(b) *Individual Defendants did not have to suffer all the way through discovery.***

Defendants argue that the individuals "had to suffer all the way through the discovery process. Each was forced to respond to discovery request, including interrogatories and document production, and Mr. Blua was deposed in Florida." [ECF No. 99; Pg. 9]. As admitted by Mr. Blua during his 30(b)(6) Corporate Designee Deposition, he and Mr. Baselli are the only people with decision making authority concerning Biocide. Accordingly, neither Mr. Blua nor Mr. Baselli had to "additionally" suffer through discovery as they both were providing discovery, and specifically depositions and document productions, on behalf of Biocide anyway. In particular, Mr. Blua nor Biocide had to incur "additional" expenses for Mr. Blua being personally deposed in Florida. Mr. Blua was already traveling to Florida on behalf of Biocide for both the Mediation and Biocide's 30(b)(6) Corporate Designee Deposition. Thus, the Individual Defendants did not incur as much "additional" travel and discovery expenses as they suggest.

Further, Defendants could have preserved their own resources by timely filing the Individual Defendants' Motion to Dismiss, and Plaintiffs should not be liable for Defendants waste of their own resources. Indeed, the Individual Defendants filed a Motion to Dismiss on

12

June 3, 2013 [ECF No. 27]; Answered the Complaint on April 17, 2013 [ECF No. 16]; and further filed an Amended Answer on May 10, 2013 [ECF No. 22]. As stated in Plaintiffs' Opposition to the Motion to Dismiss [ECF No. 44], Fed. R. Civ. P 12(b) requires that "a motion asserting any of these defenses [12(b)(1) - 12(b)(7)] must be made *before* pleading if a responsive pleading is allowed." Fed. R.Civ. P. 12(b)(emphasis added). Thus, the Individual Defendants' Motion to Dismiss was untimely and wasted expenses for Defendants. Moreover, Defendants filed two Individual Defendants' Answers to the Original Complaint. [ECF Nos. 16, 22] before they ever filed their first Motion to Dismiss Individual Defendants [ECF No. 27]. As such, Defendants should have preserved their own resources by filing the Motion to Dismiss before amending its Answer. Thus, Defendants' argument about wasting resources is merely a reflection of their own waste. Defendants did little to preserve their own resources during litigation therefore Plaintiffs should not be responsible for compensating Defendants' own wasteful litigation strategy.

Significantly, Plaintiffs again note that Defendants have not made any payments to their own attorneys in almost a year. [See ECF No. 100 at Ex. 7]. Indeed, Defendants have only paid their attorneys $18,000, which is less than seven percent (7%) of the amount opposing counsel is seeking to recover from Plaintiffs. Defendants presumably have an obligation to pay their attorneys, and the fact that they have not paid those fees in almost a year is indicative that their Motion for Attorney Fees is merely a tactic for Defendants' counsel to receive compensation, regardless of who pays the bill. As such, it is necessary for **Defendants** to pay their own attorneys as it is not the responsibility for Plaintiffs to do so because this case is not in any way exceptional.

13

### (c) *Prevailing on Summary Judgment does not make this case exceptional.*

Finally, Defendants assert that the case is baseless and thereby exceptional because "plaintiffs did not obtain a single proposed claim construction." [ECF No. 99; Pg. 17] Defendants' argument is misleading. "There is a presumption that the assertion of infringement of a duly granted patent is made in good faith." *Brooks Furniture Mfg. Inc.,* 393 F.3d at 1380 (internal citations omitted). As set forth above, Plaintiffs believe that Defendants' products infringe the '661 Patent and thereafter commenced both negotiations with the Defendants, and filed the lawsuit with Defendants in good faith. Plaintiffs believe so much that Biocide is infringing the '661 Patent and that the infringement was willful, that Plaintiffs filed an Appeal to prove as much.

Regardless of the outcome of the Appeal, Plaintiffs could not have predicted the exact outcome of the action at the outset, and should not be penalized simply because Defendants prevailed on Summary Judgment. The Federal Circuit further supports Plaintiffs assertion: "[i]nfringement is often difficult to determine, and a patentee's ultimately incorrect view of how a court will find does not of itself establish bad faith." *Brooks Furniture Mfg., Inc.* 393 F.3d at 1383. Infringement is difficult to determine and none of the parties could predict the outcome of the case. Correspondingly, Plaintiffs attempted to resolve the matter amicably at multiple junctures. Significantly, Plaintiffs and Defendants actively participated in negotiations and mediation throughout case, which is indicative that Plaintiffs' claims had at least reasonable merit.

Just as the ultimate outcome of the case does not support the claim of exceptionality, Defendants' inaccurate characterization of Plaintiffs' proposed claim construction also does not support the assertion that this case is exceptional. Defendants' attempt to utterly mischaracterize Plaintiffs' proposed claim construction in order to make Plaintiffs' assertions appear

unreasonable. First, Defendants inaccurately describe Plaintiffs' proposed construction of "connected to." Specifically Defendants states that "plaintiffs also tried to construe the term 'connected to' to essentially mean 'not connected to.'" [ECF No. 99;Pg 16]. Alternatively, Plaintiffs' actual proposed construction of "connected to" was "bring together or into contact so that a real or notional link is established, or merely inserted within." (See [ECF No.55]). Further, Defendants assert that "plaintiffs also sought a claim construction position that allowed the language 'extending into' to mean, in effect, 'not extending into.'" [ECF No. 99; Pg. 16]. Instead, Plaintiffs' actual proposed construction of "extending into" was "occupy a specified area." (See [ECF No.55]). Defendants' inaccurate representations of Plaintiffs' proposed claim construction should not be part of this Court's consideration for exceptionality as the facts set forth by the Defendants are false.

  Additionally, Defendants claim that "in cases of dubious merit…an opinion of a registered patent counsel would at least be some evidence of good faith." [ECF No. 99; Pgs. 4–5]. Plaintiffs agree. Indeed, Plaintiffs engaged patent counsel and conducted a pre-filing investigation and sent the results of its findings to Defendants on January 18, 2013 in the form of a claim chart. (See Exhibit A). Further, Plaintiffs consulted with Dr. DeFilippi as an expert in Biotechnology (enzymes), Environmental (bioremediation), and Regulatory Compliance (OSHA/EPA). Dr. DeFilippi not only supported Plaintiffs' claim of patent infringement against the Defendants but also explained the terms of the '661 in the same manner that Plaintiffs ultimately presented in their proposed claim construction. Although the Court ultimately ruled in favor of the Defendants, Plaintiffs' good faith is evidenced by its pre-filing investigation and its employment of Dr. DeFilippi as a highly regarded expert in the relative field of Biotechnology. These facts alone depict Plaintiffs good faith and support the reasonableness of Plaintiffs

commencement of the instant action. Thus, Defendants' Motion for Attorney Fees should be denied because these facts alone show that the case is not baseless or exceptional.

V.      **UNREASONABLE FEES**

While Plaintiffs do not believe that this case is exceptional in any way, nor that Defendants are not entitled to an award of Attorneys' Fees from the Plaintiffs, should the Court decide otherwise, Plaintiffs believe that the bills as submitted under Exhibit 7 to the Memorandum in Support of Motion for Attorney Fees [ECF No. 100] are unclear, unreasonable, and yet another example of bad faith.

Viewed collectively the bills show that Defendants' Counsel did not exercise billing judgment or review[2] of their 85 page bill, as it is riddled with numerous block, duplicative, non-compensable, and unreasonable entries; is replete with internal emails back and forth between the numerous attorneys on the case; and makes it nearly impossible for Plaintiffs (or for that matter the Defendants) to determine what "litigation" work was actually performed by the identified professional. Indeed, Plaintiffs' counsel spent hours sifting through Defendants' bills to ascertain why the bill was so high. "Counsel must use 'billing judgment' when requesting attorney's fees and must exclude 'excessive, redundant, or otherwise unnecessary' hours from any fee petition, irrespective of their skill, reputation, or experience." *Estrada v. Alexim Trading Corp.*, 2012 U.S. Dist. LEXIS 138194 *25 (S.D. Fla. Sept. 26, 2012)(J. Simonton). Because Defendants' billing lacks judgment, the Court must now exercise that judgment for them. The Eleventh Circuit discussed the matter specifically:

> If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are "excessive, redundant, or otherwise unnecessary." ***Courts are not authorized to be generous with the money of others***, and it is as much the duty of

---

[2] Plaintiffs note that the bills are peppered with attorney-client privilege that Defendants' counsel did not redact. For example, Defendants' curiously state "corresponding with Mr. Blua and Mr. Baselli re attorneys fees" on January 13, 2014 before the Summary Judgment hearing even took place. (ECF No. 100; Exhibit 7 at Pg. 84].

16

>courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.

*ACLU v. Barnes,* 168 F.3d 423, 428 (11th Cir.1999) (emphasis added).

The Court should cut the amount of hours for which payment is sought because Defendants submitted approximately 53 duplicative entries, 37 block entries; 15 non-compensable entries; and 37 excessive entries, all of which Plaintiffs have flagged specifically on the bills. See Exhibit E. These types of entries make it exceedingly difficult for Plaintiffs' counsel to decipher what the actual calculations are. Moreover, Defendants state in a footnote that they are "not seeking reimbursement for the fees billed by these three attorneys [Ryan Varnum, Chadwick Jackson, and Nicholas Andrews]"; however the bill contains their entries with no redactions. As such, the calculations are unclear and should not be considered.

Further, Defendants' counsel is seeking fees for internal office scheduling, creation of office calendars for scheduling, entries from attorneys not mentioned in the Motion, and entries with descriptions that say "no charge" yet still calculate a billable entry for the apparent same task. For instance, on Page 36 of the bill, Defendants' state that they bill for "review email from J. Pennington (no charge)," yet seemingly calculate a billable entry for it anyway.  Thus, it appears Defendants' counsel are attempting to recoup fees they never even billed or expected to be paid for.

Moreover, Defendants improperly bill for non-compensable hard costs and improper use out-of-state hourly rates. Specifically, the Defendants' billed for approximately $9,847.09 of disbursement costs in the Motion for Attorney Fees. [ECF No. 100 at Ex. 7].  "Section 285 also permits the prevailing party to recover disbursements that were ***necessary*** for the case." *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1069 (Fed. Cir. 1983)(emphasis added).  Plaintiffs contend that Defendants' "disbursement" costs bills are unnecessary, and indeed, Defendants do not explain why any of their disbursements were reasonable, let alone necessary. For example,

17

Plaintiffs are uncertain how "express delivery services", "secretarial overtime", and approximately $230 worth of document retrieval from Pacer are necessary. Further, Defendants' counsel state that $630/hr is a reasonable rate structure "consistent with small to mid-size legal markets" [ECF No. 99; Pg. 19]; however they make no mention of reasonability of Florida rates. The Eleventh Circuit states with more specificity below:

> The general rule is that the relevant market for purposes of determining the reasonable hourly rate for an attorney's services is the place where the case is filed. If a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims.

*ACLU v. Barnes,* 168 F.3d 423, 437 (11th Cir. 1999) (internal quotations omitted).

As such, the hourly rate submitted by Mr. Edward Pennington is unreasonable and should be reduced to rates relevant to the Florida market.

Due to the many excessive, duplicative, unnecessary and unreasonable billings, it is apparent to Plaintiffs that Defendants' counsel overbilled their clients, and the bill should either be cut across the board or by an hour-by-hour analysis. "The Court has two choices [when a bill is excessive]: conducting an hour-by-hour analysis, or applying an across-the-board cut." *Estrada*, 2012 U.S. Dist. LEXIS 138194 at * 25. In the instant matter, the Court, if it believes fee shifting to even be warranted, should cut the amount of hours for which payment is sought because the fees submitted by Defendants' counsel are blocked billed, duplicative, excessive, irrelevant, and unreasonable.

As a final example of Defendants' mischaracterization of facts, Defendants argue that they should be compensated $72,161.00 [ECF No. 99; Pg. 9] for "extensive motions practice related to the dismissal of the individual defendants" [ECF No. 99; Pg. 18]. To the contrary, the Individual Defendants inefficiently *Answered* the Complaints, twice, on April 17, 2013 [ECF No. 16] and an Amended Answer on May 10, 2013, [ECF No. 22] and only then filed a Motion to Dismiss the Amended Complaint on June 3, 2013 [ECF No. 27] with a single Reply [ECF No.

45]. This hardly qualifies as "extensive" motions practice and is yet another attempted by the Defendants to misstate the record for their own advantage. Thus, the Court should not tolerate such instances of Defendants' deceptive behavior.

### VI. CONCLUSION

This case is not exceptional and should be treated as any other patent litigation action. As such, for all of the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' Motion for Attorney Fees.

Date: April 24, 2014       By:    *s/ Garrett A. Barten*
                                  Garrett A. Barten, Esq.
                                       gbarten@cwiplaw.com
                                  Florida Bar No. 55371
                                  John Christopher, Esq.
                                       jchristopher@cwiplaw.com
                                  Florida Bar No. 493465
                                  CHRISTOPHER & WEISBERG, P.A.
                                  200 East Las Olas Boulevard, Suite 2040
                                  Fort Lauderdale, Florida 33301
                                  (954) 828-1488 (Telephone)
                                  (954) 828-9122 (Facsimile)
                                  *Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 24th day of April, 2014, I electronically filed the foregoing Plaintiffs' Opposition to Defendants' Motion for Attorney Fees with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF.

*s/ Kimberly A. Stratos*
Kimberly A. Stratos

**Service List**
*Case No.: 0:13-cv-60136-DMM*

James W. Middleton, Esq.
Smith, Gambrell & Russell, LLP
Bank of America Tower
50 North Laura Street, Suite 2600
Jacksonville, FL 32202
*Via CMECF*

Edward Pennington, Esq.
Smith, Gambrell & Russell, LLP
1055 Thomas Jefferson Street NW
Suite 400
Washington, DC 20007
*Via CMECF*

549465

20